# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| **JAMES W. BEARDEN,** | |
| *Plaintiff,* | |
| | **CIVIL ACTION NO.** |
| **v.** | **5:16-cv-00158-TES** |
| **E. I. DU PONT DE NEMOURS AND COMPANY,** | |
| *Defendant.* | |

## ORDER ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff James W. Bearden filed the instant action against E. I. du Pont de Nemours and Company ("DuPont") asserting a breach of contract claim after DuPont cancelled certain stock options that Mr. Bearden alleges he earned during his employment. Before the Court for consideration are the parties' cross-motions for summary judgment [Docs. 43; 44] and Plaintiff's Motion to Strike Dineen Declaration [Doc. 51]. For the reasons that follow, the Court **DENIES** Plaintiff's Motion to Strike Dineen Declaration [Doc. 51] and Motion for Summary Judgment [Doc. 43] and **GRANTS** Defendant's Motion for Summary Judgment [Doc. 44].

## FACTUAL BACKGROUND

### A.    Mr. Bearden's Employment History

In March of 1980, Mr. Bearden began working for Griffin Corporation, which became Griffin LLC in 1998 through a joint venture between Griffin Corporation and

DuPont. [Doc. 53-2, at ¶¶ 1-2]. As a result of the joint venture, Mr. Bearden became an employee of Griffin LLC. [*Id.* at ¶ 3]. Five years later, when DuPont acquired Griffin Corporation's interest in Griffin LLC, Griffin LLC became wholly owned by DuPont. [*Id.* at ¶ 5]. Then, in January 2005, all Griffin LLC employees, including Mr. Bearden, became employees of the Defendant company, E. I. du Pont de Nemours and Company. [*Id.* at ¶ 6]; *see also* [Doc. 50, at ¶ 1].

### B.    Mr. Bearden's Stock Option Awards

DuPont granted Mr. Bearden the disputed stock option awards in the years 2009-2011, subject to Award Terms (the "Award Terms") for each year. [Doc. 53-2, at ¶ 9]. The Award Terms[1] state that Mr. Bearden was "granted stock options under the E. I. du Pont de Nemours and Company Equity and Incentive Plan [Doc. 44-6, at pp. 8-21]" which provides in relevant part:

> The decision of the [Compensation] Committee as to all questions of interpretation and application of the Plan shall be ***final, binding and conclusive on all persons***. The Committee shall have the authority in its discretion, subject to and not inconsistent with the express provisions of the Plan, to administer the Plan and to exercise all the power and authority either specifically granted to it under the Plan or necessary or advisable in the administration of the Plan, including without limitation, . . . to determine whether, to what extent, and under what circumstances an Award may be settled, canceled, forfeited, accelerated, exchanged, or surrendered . . . ***to construe and interpret the Plan and any Award***; . . . and to make all other determinations deemed necessary or advisable for the administration of the Plan. The Committee may correct any defect or supply any omission or ***reconcile any inconsistency*** in the Plan or in any Award

---

[1] The Award Terms also state that "This grant is also subject to the terms of the Plan itself, which is hereby incorporated by reference." [Doc. 44-5, at pp. 2, 4, 6].

Terms granted hereunder in the manner and to the extent it shall deem expedient to carry the Plan into effect and ***shall be the sole and final judge*** of such expediency.

[*Id.* at ¶ 12] (emphasis added). The Award Terms for Mr. Bearden's 2009-2011 stock options contain materially identical language regarding the impact an employee's termination of employment has on the stock options. [*Id.* at ¶ 13]; *see also* [Doc 44-5, at pp. 2-7]. Additionally, the Award Terms provide that, if termination of employment is "Due to Any Other Reason (such as voluntary termination)," the options "must be exercised by the date on which you terminate employment." [*Id.* at ¶ 14]; *see also* [Doc. 44-5, at pp. 3, 5, 7]. However, if termination is "Due to Retirement (as defined in the applicable pension or retirement plan or plan company policy)," the Award Terms state that "the options will be exercisable through the "Expiration Date set forth above." [Doc. 53-2, at ¶ 15]; *see also* [Doc. 44-5, at pp. 2, 4, 6].

To better explain this provision, the "Expiration Date" for each granted stock option is "set" by the Award Terms of that specific grant. For example, the Award Terms for Mr. Bearden's 2009 stock options "set" an expiration date of February 3, 2016. [Doc. 44-5, at p. 2]; *see also* [Docs. 53-2, at ¶ 16; 54-1, at ¶ 3]. His 2010 stock options contained an expiration date of February 2, 2017, and the stock options granted to Mr. Bearden on February 2, 2011, had an expiration date of "February 1, 2018 or two years after the date

of [Mr. Bearden's] death if earlier." [Doc. 44-5, at pp. 4, 6]; *see also* [Docs. 53-2, at ¶ 16; 54-1, at ¶¶ 5, 7].[2]

In addition to the 2009-2011 Award Terms, there are two other documents pertinent to this case: The Pension and Retirement Plan (the "Plan")[3] [Doc. 44-6, at pp. 23-65] and the Summary Plan Description (the "Summary")[4] [Doc. 43-3, at pp. 2-33].

## C.    The DuPont Pension and Retirement Plan Incorporated by Reference in the Award Terms

With respect to employees like Mr. Bearden[5] who participate in the Plan, DuPont makes three contentions. First, Dupont contends that the Plan as amended on January 20, 2011, is the "applicable pension or retirement plan or plan company policy" referenced

---

[2] The Award Terms of the 2011 stock options indicate that the "[o]ption will expire no later than February 1, 2018 or two years after the date *or* your death if earlier." [Doc. 44-5, at p. 6 (emphasis added)]. While the actual language of the 2011 Award Terms contains the word "or" as opposed to "of," the Court reads this provision consistent with the parties' representations: "two years after the date *of* [Mr. Bearden's] death if earlier." [Docs. 44-2, at ¶ 16; 53-2, at ¶ 16 (emphasis added)].

[3] While originally adopted on September 1, 1904, the Plan that is relevant to this case was last amended on January 20, 2011. [Doc. 44-6, at p. 23].

[4] The document filed on CM/ECF contains an overlay of document number headings. Document 43-3 bears the following identifying label: "Case 5:16-cv-00158-LJA    Document 31-3    Filed 12/05/16    Page 1 of 33" with an overlay of "Case 5:16-cv-00158-TES    Document 43-3    Filed 11/03/17    Page 1 of 33." While Document 31-3 only contains the heading "Case 5:16-cv-00158-TES    Document 43-3    Filed 11/03/17    Page 1 of 33." *Bearden v. E I du Pont de Nemours and Co.*, No. 5:16-cv-000158-TES (M.D. Ga. filed Apr. 28, 2016). Nevertheless, these documents, both filed by Mr. Bearden, are described as the "July 2013 Pension and Retirement Plan" referred to by the Court as the "Summary."

[5] The Summary provides a short paragraph regarding the Plan's Title I eligibility requirements. The section titled "Who Is Eligible" states: "Employees of DuPont (as defined by the provisions of the Plan) hired on or before December 31, 2006[,] are eligible to participate in the DuPont Pension and Retirement Plan, Title I, beginning on the first day of DuPont employment." [Doc. 43-3, at p. 4]. Mr. Bearden became an employee of DuPont in January of 2005. Therefore, Mr. Bearden is "eligible to participate in the DuPont Pension and Retirement Plan, Title I." [*Id.*]; *see also* [Doc. 53-2, at ¶ 6].

in the 2009, 2010, and 2011 Award Terms [Doc. 44-5, at pp. 2, 4, 6]. [Doc. 44-2, at ¶ 17]. Second, as a result of their first contention, DuPont asserts that the Plan was the governing document in effect at the time of Mr. Bearden's departure from DuPont. [*Id.* at ¶ 18]. And, third, DuPont maintains that the Summary[6] (issued in July 2013) was merely "*in use* at the time" of Mr. Bearden's departure, but is not the actual pension plan that was incorporated into the Award Terms. [Doc. 53-2, at ¶ 23 (emphasis added)]; *see also* [Doc. 54-1, at ¶ 19].

Mr. Bearden, however, emphatically disputes these contentions and takes the position that DuPont "consider[ed]," until the filing of its summary judgment materials, "the July 2013 Pension and Retirement Plan to be the applicable pension or retirement plan or plan company policy" incorporated by reference in the Award Terms. [Doc. 53-2, at ¶¶ 17-18]; *see also* [Doc. 43-4, at p. 8 ("Plaintiff's termination was not a 'retirement' under the definition in the applicable July 2013 Pension and Retirement Plan in place at the time of Plaintiff's termination.")]. However, this erroneous labeling proves to be the source of much confusion in resolving the disputes for this case. There is no such thing as a "July 2013 Pension and Retirement Plan." As discussed in greater detail below, what Mr. Bearden refers to as the "July 2013 Pension and Retirement Plan," despite its heading, is simply the Summary [Doc. 43-3, at pp. 2-33].

---

[6] The Court's referral to the Summary Plan Description as "the Summary" is the same document in which DuPont identifies as the "SPD." [Doc. 44-2, at ¶¶ 22-25].

**D.** **Mr. Bearden's Retirement from DuPont and the Impact of His Termination Regarding His Stock Options**

When Mr. Bearden, at the age of 67, terminated his employment with DuPont on April 30, 2015, he had fulfilled 10.33 years of service. [Doc. 54-1, at ¶¶ 9-11]; *see also* [Doc. 42-3, at p. 104:12-14]. Before finalizing his retirement, Mr. Bearden never held any discussions with anyone at DuPont regarding how his departure might impact his stock options. [Doc. 53-2, at ¶ 30]. Following his departure, Mr. Bearden had at least five years of service with DuPont and was over the age of 65, but because he could not (as DuPont contends) meet any definition under Section IV of the Plan, he received a vested deferred pension under Section V. [*Id.* at ¶ 32]. Section V of the Plan provides that if an employee is terminated "for any reason other than retirement under the provisions of Section IV" and has at least five years of service and has reached the age of 65, that employee may receive a "deferred pension."[7] [*Id.* at ¶ 31]. Mr. Bearden's qualification to receive a

---

[7] Section IV of the Plan offers the following four eligibility requirements for "Pensions for Retired Employees" [Doc. 44-6, at p. 28]:

(1) "Normal Retirement" states that "[a]n employee will be eligible for Normal Retirement after reaching age 65 with at least 15 years of service." [*Id.*].

(2) "Early Retirement" states that "[a]n employee will be eligible for Early Retirement after reaching age 50 and prior to reaching age 65 with at least 15 years of service." [*Id.* at p. 29].

(3) "Incapability Retirement" states that "[a]n employee may be retired by the Company if the Company finds that he has become, for any reason, permanently incapable of performing the duties of his position with the degree of efficiency required by the Company, and he has at least 15 years of service." [*Id.* at p. 30].

(4) "Optional Retirement" provides two eligibility requirements. The first states that "[a]n employee will be eligible for Optional Retirement after reaching age 50 with at least 15 years of service if his employment would otherwise be involuntarily terminated for reasons other than discharge for

deferred pension under Section V of the Plan entitles him to receive $1,352.04 monthly. [Doc. 44-9, at p. 3 in connection with Docs. 53-2, at ¶¶ 32; 42-3, at pp. 109:18—111:4].

However, in May of 2015, Mr. Bearden, after logging on to his Merrill Lynch account "discovered that his 2009-2011 and 2014 stock options had expired."[8] [Doc. 53-2, at ¶ 33]. Upon learning that a significant portion of his stock options had expired, Mr. Bearden spoke with Merrill Lynch and then escalated the issue to his former boss at DuPont. [*Id.* at ¶ 34]. DuPont however, subsequently advised Mr. Bearden that his stock options for 2009-2011 would not be reinstated because DuPont considered Mr. Bearden's employment termination as a "voluntary termination" under the Award Terms for each granted stock option. [*Id.* at ¶ 40]; *see also* [Doc. 44-5, at pp. 3, 5, 7]. However, with respect to DuPont's treatment of Mr. Bearden's 2014 stock options upon his termination, DuPont discovered that there had been a mistake. [Doc. 53-2, at ¶ 43]. The 2014 stock options included different termination of employment terms than his 2009-2011 options. [*Id.* at ¶ 44]. Specifically, the 2014 stock options had a "55/10 Rule" providing that if an employee terminates his employment after reaching age 55 with at least 10 years of service, then

---

dishonesty, insubordination[,] or other misconduct." [*Id.* at p. 31]. The second states that "[a]n employee will be eligible for Optional Retirement after reaching age 45 and prior to reaching age 50 with at least 25 years of service if his employment would otherwise be involuntarily terminated due to lack of work. The length of service required for eligibility shall be reduced by two months, or a proportionate part thereof, for each month or portion thereof which has elapsed since the employee reached age 45." [*Id.*].

[8] Plaintiff's stock options expired because he failed to exercise his options *before* or on the date he terminated his employment as required by the Award Terms. *See* [Doc. 44-5, at pp. 3,5,7].

that stock option will remain exercisable through the listed expiration date. [*Id.* at ¶ 45].

Because Mr. Bearden satisfied the "55/10 Rule" included in the terms of his 2014 stock options, DuPont reinstated Plaintiff's those stock options. [*Id.* at ¶¶ 46, 47].

## DISCUSSION

### A.    Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As to issues for which the movant would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne*, 515 F. App'x 832, 834 (11th Cir. 2013) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)). As to issues for which the non-movant would bear the burden of proof at trial, the movant may (1) simply point out an absence of evidence to support the non-moving party's case or (2) provide "affirmative evidence demonstrating that the [non-movant] will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant satisfies its burden, the burden shifts to the non-movant, who must "go beyond the pleadings and present *affirmative evidence* to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17) (emphasis added). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the [non-moving] party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion. *See Am. Banks Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotation marks and citations omitted). The Court will consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *See Am. Bankers Ins. Grp.*, 408 F.3d at 1331. However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (internal quotations omitted).

**B.     The Parties' Cross-Motions for Summary Judgment [Docs. 43, 44]**

The parties' cross-motions for summary judgment present well-reasoned arguments in support of what they believe should be the outcome of this case. Even though the record before the Court is quite extensive, the legal issues are relatively straightforward.[9] The Court's decision revolves around two core issues: (1) whether the Plan or the Summary is the controlling document in this case, and (2) whether the Compensation Committee acted in bad faith when it interpreted the Award Terms, the underlying Equity and Incentive Plan, and the Plan itself to effectively cancel Mr. Bearden's stock options.

### 1.      The Dineen Declaration

As an initial matter, Mr. Bearden seeks to strike the Declaration of Mary Dineen ("Dineen Declaration") pursuant to Federal Rules of Civil Procedure 26(e) and 37. [Doc. 51, at p. 1]. In his Motion to Strike [Doc. 51], Mr. Bearden avers that the Dineen Declaration is nothing more than a "sham affidavit" taking an "about-face" position to prior positions taken by DuPont during the discovery period on the "most central issues" of the case: (1) the identification of the applicable plan or plan company policy; (2) where in the plan or plan company policy "retirement" is defined; and (3) the reason *why* Mr. Bearden was not considered retired. [*Id.*].

---

[9] While the motions before the Court are indeed "cross-motions," the arguments and issues presented within them allow the Court to explain its decision in one order.

Federal Rule of Civil Procedure 26 states that "a party must, without awaiting a discovery request, provide" "the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses" as well as "all documents . . . that the disclosing party . . . may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii). And, as Mr. Bearden urges, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

As previously mentioned, there are two other documents pertinent to this case: the Plan [Doc. 44-6, at pp. 23-65] and the Summary [Doc. 43-3, at pp. 2-33]. Perhaps the parties' repeated references to the Summary as the "actual plan" by calling it the "July 2013 Pension and Retirement Plan" is the source of confusion. To clarify, the Summary is in fact, not a "pension plan." Rather, the Summary is merely "a concise description of Plan coverage" as amended on January 20, 2011. [Doc. 43-3, at p. 4]; *see also* [Doc. 44-6, at p. 23]. Therefore, the Summary is not, by any means, a governing document in this case and was undoubtedly issued to DuPont employees in an attempt to "communicate" information about the Plan in "easily and understandable terms." [Doc. 43-3, at p. 4]. Most importantly, the Summary by its own terms provides, "In the event of a discrepancy between [the Summary] and the Plan [], the Plan [] will govern." [*Id.*]. As such, the Court,

in deciding this case, will only look to the Plan. Any arguments referencing the Summary, any purported definition contained in the Summary, or ambiguities within it are therefore considered moot. [10]

To the extent Mr. Bearden argues that he was "ambush[ed]" by Mary Dineen's declaration, such allegation is not supported by the record. [Doc. 51, at p. 5]. Even though Mr. Bearden's contentions that the inner workings of the Compensation Committee were briefly disclosed during the early stages of discovery in this case are, to some extent true,

_____

[10] Mr. Bearden points to substantive differences between the Summary and the Plan: most notably the fact that the Summary contains two definitions of "Normal Retirement" one of which is absent from the Plan. [Doc. 51, at p. 2 (citing [Doc. 43-3, at pp. 4-5])]. Second, Mr. Bearden states that DuPont, during discovery, maintained that "Retirement" is defined by the "When You May Retire" section discussed in the Summary. [Doc. 43-4, at p. 8]; *see also* [Doc. 43-3, at p. 5]. According to Mr. Bearden, DuPont's "new" argument that "Retirement" is defined by Section IV of the Plan—as opposed to the Summary—is a material change because the Summary's "When You May Retire" section contains a category called "Other Retirement" which is not present in the Plan. [Doc. 51, at p. 2]. Third, Mr. Bearden alleges that the Compensation Committee itself, nor any member thereof, was disclosed among the list of persons "involved in the decision to terminate [Mr. Bearden's] stock options or the decision not to reinstate [Mr. Bearden's] stock options." [*Id*. at pp. 2-3]; *see also* [Doc. 43-4, at pp. 6-7]. Despite Mr. Bearden's Requests for Production of Documents seeking company minutes, internal letters, electronic mail, memoranda, and the like—he notes that DuPont never produced any materials evidencing occasions where, as the Dineen Declaration contends, "the Compensation Committee has consistently interpreted the phrase 'Due to Retirement' under the 2009-2011 Award Terms to refer to retirement under Section IV of [the Plan]." [Docs. 51, at p. 3; 44-6, at p. 5, ¶ 12]; *see, e.g.*, [Doc. 51-1, at ¶ 2].

In addition to these three main arguments, Mr. Bearden alleges that DuPont made an "admission in judicio" that was inconsistent with its previous discovery responses. [Doc. 51, at p. 3]. To support this allegation, Mr. Bearden directs the Court to DuPont's argument regarding the futility of his breach of contract claim. *See* [Doc. 31, at pp. 6-7 ("The July 2013 Pension and Retirement Plan (which was in place at the time Plaintiff resigned), in turn, contains a section entitled 'When You May Retire.' . . . A prior version of the Pension and Retirement Plan similarly provided that "an employee will be eligible for Normal Retirement after reaching age 65 with at least 15 years of service.")]. Each of the above-mentioned arguments leads to one general objection—the contents of the Dineen Declaration and their impact on the central issues of this case. Mr. Bearden contends that because DuPont failed to disclose the relevance of the Compensation Committee, produce any of its members as witnesses, or produce any documents relating to the Compensation Committee, the Court should preclude it from raising this line of argument at summary judgment and/or trial. As explained above, the Court denies his Motion to Strike.

DuPont's arguments in response to the motion to strike also present valid points. For example, DuPont first identified Ms. Dineen in its initial disclosures and stated that "[she] may have knowledge or information regarding the expiration of [Mr. Bearden's] stock options, the allegations set forth in the Complaint, and Defendant's defenses." [Doc. 55, at p. 5]; *see also* [Doc. 51-2, at p. 4, ¶ 12]. Mr. Bearden, in reply, later admits that "Dineen was disclosed in discovery" but "only as having the same scope of knowledge that DuPont described for every witness it identified in its initial disclosures[.]" [Doc. 59, at p. 5]. Likewise, the Court concludes that Ms. Dineen was, in fact, disclosed. However, the Court does not condone such vague, "copy and paste" initial disclosure practices, especially when the party knows that the particular witness in question has such pivotal knowledge that will almost certainly impact the outcome of the case. Proper, or rather more pertinent disclosure, could have prevented unnecessary expense and unnecessary use of both parties' and the Court's time.

Nevertheless, the Dineen Declaration [Doc. 44-6, at pp. 2-6] will not be excluded from the record based on the Court's finding that it is not a sham affidavit. The Court's arduous cull of this case's extensive record in order to understand the issues before it underscores the need for the clarification provided by the Dineen Declaration. In the Court's opinion, Ms. Dineen's statements did not contradict previous interrogatory responses. Instead, her statements were mere clarifications and as such, for the reasons

discussed below, a Rule 37 sanction imposed on DuPont regarding the timeliness of its disclosure of the Dineen Declaration is not warranted.

Despite Mr. Bearden's belief that he "is not required to engage in a number of expensive depositions to potentially [uncover] information which should have been disclosed in [DuPont's] initial disclosures and interrogatory responses," he never sought to take Ms. Dineen's deposition *after* learning what knowledge she *might* possess. [Doc. 59, at p. 7]; *see, e.g.*, [Doc. 42-5, at p. 25:11-19 (". . . I have an idea that we -- we probably went to the subject matter expert, the pension expert, within the COE, Ms. Mary Dineen . . . .")]. Mr. Bearden states that DuPont "failed to disclose the relevance of the Compensation Committee," however, a litigant should not rely on its opponent to identify all information that might be critical (or even relevant) to his case. [Doc. 59, at p. 7].

Regardless of whether this information should have been presented in an initial disclosure, the fact remains that DuPont disclosed it in its motion for summary judgment. If Plaintiff felt that DuPont had sandbagged him by revealing critical information at a late stage, he could have asked the Court to "pause" the proceedings or otherwise reopen discovery so that Mr. Bearden could depose Ms. Dineen in order to determine the veracity of her statements, the depth of her knowledge and the impact of that knowledge on his case. *See* Fed. R. Civ. P. 56(d). However, Mr. Bearden has not asked the Court to allow him the chance to test Ms. Dineen's knowledge and truthfulness through cross-

examination. Rather, the Plaintiff has only asked the Court to exclude her clearly relevant and important declaration. Accordingly, the Court **DENIES** Plaintiff's Motion to Strike Dineen Declaration [Doc. 51].

> 2. <u>Discussion of the Parties' Arguments in Their Respective Motions for Summary Judgment</u>

Having established that the Plan is clearly the governing document in this case, the ultimate issue before the Court is now whether the Compensation Committee interpreted the Award Terms in bad faith. The Compensation Committee interpreted "Retirement" (as it is used under in the 2009-2011 Award Terms [Doc. 44-5, at pp. 2, 4, 6]) to mean "Normal Retirement" as defined in Section IV of the Plan. [Doc. 44-6, at p. 5, ¶ 12]. Section IV of the Plan defines "Normal Retirement" as retiring "after reaching age 65 with at least 15 years of service." [*Id.* at p. 28]. Thus, because Mr. Bearden only had 10.33 years of service, the Compensation Committee determined he did not "retire" as defined in the Plan, but rather, voluntarily terminated his employment.

In spite of the Compensation Committee's interpretation, Mr. Bearden argues in his summary judgment motion[11] that "'Retirement' should be defined by its usual and

---

[11] The Equity and Incentive Plan plainly states that "the Plan and all determinations made and actions taken pursuant hereto shall be governed by the laws of the State of Delaware without giving effect to the conflict of laws principles thereof." [Doc. 44-6, at p. 21]. Despite this provision, the parties cite to both Delaware and Georgia law in their briefs. Mr. Bearden contends that "Georgia law governs since Georgia is the place of the creation of the contract." [Doc. 53, at p. 5]; *see also* [Doc. 43-1, at p. 10, n.3]. Whereas, DuPont contends that "[a]bsent a contrary public policy, Georgia courts will enforce a contractual choice of law clause." [Doc. 54, at p. 3 (citing *Carr v. Kupfer*, 296 S.E.2d 560, 562 (Ga. 1982))]. Notwithstanding these arguments, the Court (like the parties) uses both Georgia and Delaware law throughout this order because the outcome is the same.

ordinary meaning" because the documents at issue in this case do not—according to him—indicate otherwise. [Doc. 43-1, at pp. 10-11 (citing *Lafarge Bldg. Materials, Inc. v. Thompson*, 763 S.E.2d 444, 446 (Ga. 2014) (holding "unless the contract indicates otherwise, we generally accept that contractual terms carry their ordinary meanings."))].

### a. DuPont's Authority to Unilaterally Interpret the Plan and Award Terms

As a preliminary matter, Mr. Bearden asserts that "[b]ecause an agreement is a manifestation of mutual assent on the part of two or more persons, one party to an agreement cannot 'without the other party's consent, unilaterally modify the agreement once it has been executed.'" [Doc. 53, at p. 12 (quoting *Kuhne v. Fla. Dep't of Corr.*, 745 F.3d 1091, 1096 (11th Cir. 2014))]. He argues that to the extent the Compensation Committee made *any* interpretation, that interpretation is void because it "would modify the terms of the contract" and effectively "moot[]" the Summary's "Other Retirement" definition and Mr. Bearden's favorable definitions of "Retirement" embedded within the Summary's "When You May Retire"[12] section. [Doc. 57, at pp. 9-10]. However, "under ordinary contract principles, where one party is granted discretion to interpret a contract, the court's review is limited to whether that party has exercised its discretion reasonably and in good faith." [Doc. 54, at p. 3 (citing *Goldstein v. Johnson & Johnson*, 251 F.3d 433, 444

---

[12] Mr. Bearden contends that the Award Terms' "or plan company policy" provision could arguably mean that the Summary could also be the governing document. However, this simply cannot be the case. By the Summary's own terms, any "discrepancy" will be governed by the Plan. Thus, the Plan, notwithstanding this argument, still carries the day.

(3d. Cir. 2001) ("Ordinary contract principles require that, where one party is granted discretion under the terms of the contact, that discretion must be exercised in good faith— a requirement that includes the duty to exercise discretion reasonably.")].

Mr. Bearden, by accepting the stock options, affirmatively assented to the specific provision of the Award terms that allowed DuPont the ability to unilaterally interpret its own documents.[13] *See, e.g.*, [Doc. 44-6, at p. 13, at ¶ 3 ("[T]o construe and interpret the Plan and any Award," "The Committee may correct any defect or supply any omission or reconcile any inconsistency in the Plan or in any Award Terms . . . .")]. Notwithstanding Plaintiff's passionate arguments that the Compensation Committee does not have discretion to interpret the Award Terms of the Plan, the Award Terms unequivocally states that the stock options are granted "under" the Equity and Incentive Plan. Because the Equity and Incentive Plan clearly authorizes the Compensation Committee to "reconcile and inconsistency in the Plan or in any Award Terms," Plaintiff's argument fails.

The record reflects an absence of bad faith due to the Compensation Committee's consistent interpretation that the phrase "Due to Retirement (as defined in the applicable pension or retirement plan or plan company policy)" in the Award Terms refers to "Retirement" under Section IV of the Plan. [Doc. 44-6, at p. 5, ¶ 12]. In light of the Court's

---

[13] Additionally, to disallow the Committee from making *any* interpretations, as Mr. Bearden would have the Court do, would effectively render that provision of the Plan superfluous and without meaning. Under the canons of contract construction, this the Court simply cannot do.

consideration of the Dineen Declaration, a review of this case (with the summary judgment standard in mind) reveals that Plaintiff did not present affirmative evidence to contradict the contents of the Dineen Declaration and thereby failed to show that a genuine issue of material fact exists.[14] The absence of such evidence means that Mr. Bearden cannot meet his burden of showing that DuPont's interpretation of "Due to Retirement (as defined in the applicable pension or retirement plan or plan company policy)" (as to his situation) was made in bad faith or different than any interpretation DuPont's Compensation Committee previously rendered. [Doc. 44-5, at pp. 2, 4, 6].

This conclusion—that DuPont did not act in bad faith—is contingent upon two reasons. First, because DuPont has consistently applied this interpretation, and has never made any exceptions shows that the Award Terms (as interpreted in this case) can be a reasonable and lawful interpretation. This holds true, so long as *all* employees, in Mr. Bearden's position receive the same interpretation. Second, once Mr. Bearden raised his concerns regarding the expiration of his options, DuPont promptly[15] and thoroughly

---

[14] "[T]herefore, to survive summary judgment, Plaintiff must present sufficient evidence that Defendant's decision to deny him an incentive award under its interpretation of the Agreement was made in bad faith." *Neibert v. Computer Sci. Corp.*, No. 1:12-cv-02277-SCJ, 2014 WL 11462721, at *5 (N.D. Ga. Feb. 4, 2014) *aff'd* 621 F. App'x 585 (11th Cir. 2015).

[15] Even if DuPont did not act diligently according to Plaintiff's standards, thereby giving rise to his allegation of bad faith, "neither lack of diligence nor negligence is the equivalent of bad faith." *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 571 F.3d 1143, 1146-47 (11th Cir. 2009) (citing *Engbrock v. Fed. Ins. Co.*, 370 F.2d 784, 787 (5th Cir. 1967)). DuPont's director of Human Resources, Mr. Bearden's supervisor, and other personnel (including DuPont's legal department) clearly took immediate action when presented with Plaintiff's concerns and in no way performed an inadequate investigation. *See Floating Docks*, 571 F. 3d at 1147 (holding "[w]hile neither evidence of an inadequate and unreasonable investigation nor a self-

investigated his concerns. [Doc. 53-2, at ¶ 34]; *see also* Doc. 56, at pp. 5-6]. And, upon discovering that Plaintiff's 2014 stock options should not have expired upon termination of employment, DuPont promptly reinstated them.

   b.   *Mr. Bearden's Arguments Regarding the Ordinary Meaning of the Word "Retirement"*

Plaintiff states that because neither the Award Terms nor the Plan indicates that "Retirement" should carry an interpretation *different* than its ordinary meaning—the dictionary definition should be used. [Doc. 43-1, at pp. 11-12]. Stated differently, Mr. Bearden takes the position that "because the pension plan does not indicate an intent to define retirement with a non-ordinary meaning, the dictionary definition controls." [Doc. 57, at p. 4]. To that end, Mr. Bearden seeks to define "Retirement" as "termination of one's own employment or career, esp. upon reaching a certain age or for health reasons." [Doc. 43-1, at p. 13 (citing Retirement, Black's Law Dictionary, 10th ed. 2014)]. Applying that definition, Mr. Bearden claims that he "retired in the ordinary sense of the word" because

---

interested settlement standing alone would be sufficient to support a finding of bad faith, when coupled together, a jury could reasonably infer a surety's improper motive.).

Mr. Bearden's own Award Terms provided information regarding his stock options if his employment did not terminate "Due to Retirement." [Doc. 44-5, at pp. 2-7]. His own failure to read the terms of the alleged contract or to ask questions prior to terminating his employment does not demonstrate that DuPont breached any duty owed to Plaintiff. He was fully apprised of the terms applicable to his stock options, and could have asked questions prior to his separation—if he needed clarification.

"he terminated his career upon reaching age 67" and because "DuPont's own employees agree that Mr. Bearden retired." [Doc. 43-1, at p. 13].[16]

Plaintiff's argument is misplaced. The Award Terms clearly provide their own specific meaning of what constitutes "Retirement" other than what is included in the dictionary. Likewise, the Plan provides its own definitions of "Retirement," only one of which ("Normal Retirement") could conceivably apply to Plaintiff's situation. The Award Terms governing Mr. Bearden's relevant stock options clearly provide that if termination of employment is "Due to Retirement *(as defined in the applicable pension or retirement plan or plan company policy)*," the options will not expire upon termination. [Doc. 44-5, at pp. 2, 4, 6 (parentheses in original; emphases added)]. Plaintiff's attempts to apply his ordinary meaning of the term "Retirement" ignores the language contained in the parenthetical. Moreover, by inserting this parenthetical, the parties' intent is even clearer because the very language of the Award Terms themselves pulls the meaning of "Retirement" from its ordinary, common usage meaning and adheres to the definition contained in the parenthetical.

As DuPont aptly states, the lack of a single, global definition of "Retirement" in the Plan itself should not permit the Court to impose a "global definition" or any reading

---

[16] Plaintiff presents numerous examples of DuPont employees in conversations with him using "retire" in its ordinary sense. However, uses of a word in their ordinary sense cannot be binding on a company based on the exchange of simple office pleasantries. *See* [Doc. 43-1, at p. 3 ("[C]ongratulations on your retirement!")].

of the word "Retirement" that is non-existent in the alleged contract or is inconsistent with the Plan's already existing terms. [Doc. 54 at p. 8 (citing *In re Viking Pump, Inc.*, 148 A.3d 633, 648 (Del. 2016) (" . . . courts interpreting a contract will give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its provisions.")]. Simply put, just because Section IV of the Plan lists multiple ways an employee can qualify for retirement does not equate to Mr. Bearden being able to ignore those definitions and incorporate a more convenient definition of his own.

Finally, in resolving Plaintiff's arguments that the Plan is ambiguous, contracts "[are] not rendered ambiguous simply because the parties in litigation differ concerning its meaning." *City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993). Instead, as DuPont iterates, contracts are ambiguous "only when the provisions in controversy are reasonable or fairly susceptible of different interpretations or may have two or more different meanings." *Comet Sys. v. MIVA, Inc.*, 980 A.2d 1024, 1030 (Del. Ch. 2008). Given that the governing document, the Plan, only provides one definition of "Normal Retirement," it is axiomatic that no reasonable jury could find a different interpretation. Thus, if there is only *one* interpretation, that interpretation cannot be made

in bad faith. Accordingly, the Court **GRANTS** DuPont's Motion for Summary Judgment [Doc. 54].[17]

**CONCLUSION**

For the reasons more fully explained above, the Court **DENIES** Mr. Bearden's Motion for Summary Judgment [Doc. 43] and Motion to Strike Dineen Declaration [Doc. 51] and **GRANTS** DuPont's Motion for Summary Judgment [Doc. 44]. The Clerk of the Court is directed to close the case.

**SO ORDERED**, this 26th day of September, 2018.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[17] Mr. Bearden also made a claim for attorneys' fees under O.C.G.A. 13-6-11., but DuPont contends that it is also entitled to summary judgment on this claim under Georgia law. Given that the Court fully grants DuPont's summary judgment motion, the Court, as a matter of law, also **GRANTS** DuPont's summary judgment motion as it relates to Mr. Bearden's claim for attorney fees.